UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

William J. Carey,
     Plaintiff

     v.                                    Civil No. 06-cv-293-SM
                                           Opinion No. 2007 DNH 109
Charles Ward, M.D.,
and Denise Ryan, L.P.N.,
     Defendants

**O R D E R**

Pro se plaintiff, William Carey, is an inmate at New Hampshire's Northern Correctional facility and no stranger to federal litigation.[1]  He brings this action seeking damages for alleged violations of his constitutionally protected rights.  See generally 42 U.S.C. § 1983.  Specifically, Carey claims that while he was a pre-trial detainee at the Hillsborough County House of Corrections (also known as "Valley Street"), Dr. Charles Ward and Nurse Denise Ryan violated his Eighth and Fourteenth

---

[1]  Carey has been the plaintiff in at least nine suits filed in this court, nearly all of which appear to relate in some way to his multiple periods of incarceration in the state prison system and/or Hillsborough County House of Corrections.  He has sued Dr. Ward (one of the defendants in this case) at least three times for allegedly showing deliberate indifference to his serious medical needs – all of which relate to the same period covered by Carey's current complaint.  Whether the claims raised in this proceeding might be barred by the doctrines of res judicata and/or collateral estoppel is not clear.

Amendment rights by displaying deliberate indifference to his serious medical needs.

Pending before the court are defendants' motions for summary judgment. For the reasons set forth below, those motions are granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with evidence that conflicts with that proffered by the moving party. See generally Fed. R. Civ. P. 56(e). It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore bald assertions, unsupported conclusions, and mere speculation. See Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir. 1997).

Here, in support of their respective motions for judgment as a matter of law, defendants have submitted affidavits as well as copies of Carey's prison records (including both medical request slips and medical records). In his two-page objection (and his three-page "motion to object," which the court has treated as a supplemental objection), Carey merely asserts that defendants are not credible and advances entirely unsupported claims of medical malpractice. Although Carey is proceeding pro se, he is a frequent litigant in this court and, given his substantial

litigation experience, is presumed to fully understand that more is necessary to overcome a properly supported motion for summary judgment.

## Background

The factual background is set forth in detail in defendants' memoranda. Carey's history of medical treatment at Valley Street is chronicled in the affidavits submitted by defendants and attached to their respective memoranda of law. Because Carey has not offered any affidavits, depositions, or records that contradict defendants' recitation of the relevant facts, the court will assume that they are accurate. See Local Rule 7.2(b)(2) ("All properly supported material facts set forth in the moving party's factual statement shall be deemed admitted unless properly opposed by the adverse party.").

Defendants' statement of material facts are part of the record. Those facts relevant to the disposition of this matter are discussed as appropriate.

**Discussion**

I.  Deliberate Indifference to Serious Medical Needs.

In order to prove a section 1983 claim for medical mistreatment, an inmate or detainee must show that prison officials demonstrated "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both subjective (state-of-mind) and objective components. See DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991). In Farmer v. Brennan, 511 U.S. 825 (1994), Justice Souter explained the state-of-mind element of deliberate indifference in the context of an Eighth Amendment claim. Id. at 834-847. In short, a prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.[2]

---

[2] While Carey was housed at Valley Street, he was a pretrial detainee. Accordingly, the constitutional obligations owed to him by defendants flow from the provisions of the Fourteenth, rather than the Eighth Amendment. Nevertheless, the protections available to detainees under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).

Accordingly, an Eighth (or Fourteenth) Amendment medical mistreatment claim cannot be premised upon a theory of simple negligence or medical malpractice; a medical care provider's conduct must go beyond negligence in diagnosing or treating a prisoner's medical condition.  Similarly, a constitutional violation does not occur merely because a prisoner happens to disagree with a nurse's or physician's decision regarding the proper course of medical treatment.  See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.").

With regard to the objective component of the deliberate indifference test, the inmate must show that he or she has suffered a serious deprivation of a fundamental right or basic human need.  See DesRosiers, 949 F.2d at 18.  As the Supreme Court has observed, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."

Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted).  See also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. . . .  But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

II.  Plaintiff's Medical Treatment.

Carey claims that defendants violated his constitutional rights by having been deliberately indifferent to his serious medical needs.  He says both Dr. Ward and Nurse Ryan were aware that he suffered from an umbilical hernia (a condition that pre-dated his initial detention at Valley Street) and, notwithstanding his repeated complaints, knowingly and deliberately denied him appropriate treatment.  The record does not, however, support such a claim.

Although both Ward and Ryan were, indeed, aware that Carey suffered from an umbilical hernia, it was both small and

7

asymptomatic. In fact, during one visit with Nurse Ryan in December of 2004, Carey mentioned the hernia but, when asked whether it caused him any pain or discomfort, he said it did not. He then added that, "This stuff is years old. I just like to remind them for the hell of it." Carey made no specific request for treatment. In March of 2005, when Carey submitted a sick slip in which he complained that his hernia had not yet been surgically repaired, Nurse Ryan put restrictions on his activities and referred him to Dr. Ward for evaluation. When Dr. Ward examined Carey, he noted the existence of the hernia, but observed that it was "asymptomatic at this time."

Subsequently, in January of 2006, Carey submitted a sick slip in which he complained that his hernia had become worse. Carey was again referred to Dr. Ward, who noted that the hernia was approximately 1.5 centimeters in size. Ward reported that Carey's condition should be monitored and he instructed Carey to report any changes. Later that day, Carey submitted a grievance in which he alleged that "Dr. Frankenstein" and "Igor" (i.e., Dr. Ward and Nurse Ryan) were not properly treating his hernia. The following day, Ryan provided Carey with a written response, in which she reminded him that "you were seen and assessed. The doctor noted no change to the hernia which you have had since

approximately 11/20/03 . . . As Dr. Ward documented, we will continue to observe and you were instructed to report any changes."

Carey did not report any subsequent changes to the hernia. He did, however, undergo a physical examination in July of 2006, during which Dr. Ward again noted the presence of the hernia, as well as the fact that it was easily reducible.  Carey was transferred to the state prison facility the following month and underwent surgery to repair the hernia at some point in 2007.  In support of his claim that defendants were deliberately indifferent to his serious medical needs, Carey points to a medical report dated January 17, 2007 (i.e., six months after his last physical from Dr. Ward), in which the examining physician noted that his umbilical hernia was (at least as of that date) "nontender [and] partially reducible but not completely so."

Carey seems to believe that because his hernia eventually developed to the point that it was not completely reducible and because he eventually had surgery to repair it, Ward and Ryan were necessarily deliberately indifferent to his condition when he was previously housed at Valley Street.  He has not, however, provided any evidence or expert testimony to support such a

claim.  And, even if he could demonstrate that Ward and/or Ryan was negligent in failing to arrange for surgery, more would be necessary to support a claim of deliberate indifference.

As noted above, mere negligence or simple medical malpractice does not rise to the level of cruel and unusual punishment, nor does it constitute deliberate indifference to serious medical needs.  Instead, an inmate/plaintiff must point to some evidence from which a trier of fact might reasonably conclude that the treating physician or nurse knew that he faced a substantial risk of serious harm and, nevertheless, disregarded that risk by failing to take reasonable measures to abate it.  <u>Farmer</u>, 511 U.S. at 847.  Here, Carey has completely failed to demonstrate that there is any genuinely disputed material fact on that essential point.

The record supports a different view altogether — that, while Ward and Ryan were aware of Carey's hernia, they both believed that it was asymptomatic, had not grown in size during Carey's various detentions at Valley Street, and did not require prompt surgery.  When Carey complained of the hernia's existence (though not of any related pain or discomfort), he was specifically instructed to limit his physical activity and to

report any changes.  When he subsequently complained of changes to the hernia, he was immediately seen by Dr. Ward, who concluded, once again, that there had been no noticeable changes (and, at least implicitly, that Carey was exaggerating his claims that the hernia had grown in size).

The only bit of evidence presented by Carey that is even remotely supportive of his claim is a statement of general information on umbilical hernias, which he obtained from an online resource.[3]  That document (no. 47-3) provides a general description of umbilical hernias, states how they are diagnosed, discusses the potential risks of untreated umbilical hernias, and explains how they are treated.  Presumably, Carey relies on the latter section of that document, which provides:

> How is an umbilical hernia treated?  <u>Most adults with umbilical hernias will need surgery to fix their hernias</u>.  Until surgery can be done, medicines such as acetaminophen or ibuprofen may help decrease discomfort from your hernia.  Ask your caregiver which over-the-counter pain medicine is right for you.  Always tell your caregiver if you have new or worsening pain in the

---

[3] Defendants object to Carey's reliance on that document and move the court to strike it from the record.  <u>See</u> document no. 45.  Among other things, defendants point out that the statements contained in that document are hearsay and of questionable accuracy and reliability.  The court need not address defendants' arguments because, even if the document were admissible, it would not help Carey avoid summary judgment.

>       area of your hernia.  <u>You may need surgery right away</u>
>       (emergency surgery) if a loop of intestine becomes
>       trapped in the hernia.

<u>Id</u>. at 2 (emphasis supplied).  Here, however, Carey has failed to point to anything in the record suggesting that he suffered any pain or discomfort as a result of his hernia.  Nor has he pointed to any medical resources suggesting that, despite the absence of any symptoms or pain, prompt surgery is medically necessary (or even appropriate) for a small and easily reducible hernia like his.

In short, nothing in the record suggests that either Dr. Ward or Nurse Ryan provided sub-standard care to Carey, much less were indifferent to his medical needs.  When he raised the issue of his hernia, medical staff at Valley Street (including Ward and Ryan) always immediately asked if he was experiencing any symptoms or pain.  He was not.  Accordingly, the medical staff instructed him to monitor the condition and report any changes he might observe.  It is difficult to imagine how such medical advice might even be construed as malpractice.

To prevail on his constitutional claim, Carey must point to some evidence which, if credited, would support the conclusion

that: (1) he had a "serious medical need" – that is, one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990); (2) defendants knew or should have known that the failure to treat his condition surgically would result in "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Estelle, 429 U.S. at 105-106; and (3) despite such knowledge, defendants were deliberately indifferent to his situation and knowingly denied him access to appropriate medical treatment (i.e., surgery).  He has failed to do so.  In fact, the undisputed material facts suggest that Carey received more than adequate medical care during his various detentions at Valley Street.

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' memoranda, defendants have demonstrated that they are entitled to judgment as a matter of law as to Carey's claim that they were deliberately indifferent to his serious medical needs. Accordingly, defendant Ryan's motion for summary judgment

(document no. 37) and defendant Ward's motion for summary judgment (document no. 41) are granted.

Plaintiff's motions for subpoena ad testifcandum (documents no. 43 and 51) are denied. Defendant Ward's motion to strike (document no. 45) is denied as moot, as is Defendant Ryan's motion to join (document no. 46). Finally, although defendants have yet to respond to plaintiff's motion for summary judgment (as the time for doing so has not yet run), that motion (document no. 47) is, for the reasons set forth above, denied as well.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

September 7, 2007

cc:  William J. Carey, pro se
     Jonathan A. Lax, Esq.
     Elizabeth L. Hurley, Esq.
     John A. Curran, Esq.